UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
Eastern Division

WILLIAM LESTER, JR.,

        Plaintiff,

    -v-

PORTFOLIO RECOVERY
ASSOCIATES, LLC, et al.

        Defendants.

Case No. 1:18-cv-00267-VEH

**DEFENDANT PORTFOLIO RECOVERY ASSOCIATES, LLC'S
MEMORANDUM OF LAW IN SUPPORT OF MOTION TO STAY OR
<u>DISMISS PROCEEDINGS AND COMPEL ARBITRATION</u>**

Danielle K. Greco
305 Church at North Hills Street
Raleigh, North Carolina
Telephone: (919) 835-4100
Facsimile: (919) 835-4101
Email: danielle.greco@troutman.com

Ethan G. Ostroff (Admitted *pro hac vice*)
222 Central Park Avenue, Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7541
Facsimile: (757) 687-1541
Email: ethan.ostroff@troutman.com

*Attorneys for Defendant
Portfolio Recovery Associates, LLC*

## **TABLE OF CONTENTS**

Page(s)

INTRODUCTION ....................................................................................................1

FACTS ....................................................................................................................1

ARGUMENT ..........................................................................................................4

    1.     General Scope of Federal Arbitration Act .............................................4

    2.     A Valid Agreement to Arbitrate Exists ...................................................5

    3.     Plaintiff's Claims Fall Within the Scope of the Arbitration Clause .....9

    4.     This Court Should Dismiss This Action ...............................................11

CONCLUSION .....................................................................................................12

CERTIFICATION AND CERTIFICATE OF SERVICE .......................................13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Am. Express Bank FSB v. Tanne*,
  2017 Utah App. LEXIS 233 (Utah Ct. App. Nov. 30, 2017) ..............................6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................................4

*Athon v. Direct Merchs. Bank*,
  251 Fed. Appx. 602 (11th Cir. 2007) ................................................................11

*Bd. Of Trustees of City of Delray Beach Police and Firefighters
  Retirement Sys. v. Citigroup Global Markets, Inc.*,
  622 F.3d 1335 (11th Cir. 2010) .........................................................................10

*Bolanos v. First Investors Servicing Corp.*,
  Case Number: 10-23365-CIV-MORENO, 2010 U.S. Dist. LEXIS
  115475 (S.D. Fla. Oct. 28, 2010) .......................................................................11

*Brown v. ITT Consumer Fin. Corp.*,
  211 F.3d 1217 (11th Cir. 2000) .........................................................................10

*Burch v. P.J. Cheese, Inc.*,
  861 F.3d 1338 (11th Cir. 2017) ...........................................................................6

*Campbell v. Verizon Wireless, LLC*,
  Civil Action 14-0517-WS-N, 2015 U.S. Dist. LEXIS 10707
  (S.D. Ala. Jan. 29, 2015) ....................................................................................10

*Chastain v. Robinson-Humphrey Co.*,
  957 F.2d 851, 854 (11th Cir. 1992) ......................................................................7

*Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*,
  252 F.3d 707, 709-10 (4th Cir. 2001) ................................................................12

*Doe v. Princess Cruise Lines, Ltd.*,
  657 F.3d 1204 (11th Cir. 2011) ...........................................................................9

*Emerson Software Sols., Inc. v. Regions Fin. Corp.*,
   Case No.: 2:17-cv-00287-JHE, 2017 U.S. Dist. LEXIS 172830
   (N.D. Ala. Oct. 19, 2017) ...................................................................................9

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20, 26 (1991) ......................................................................................5

*Island Peak Ranch, LLC v. FIIK Inv. & Holdings, Inc.*,
   Civil No. 2:02-CV-562, 2008 U.S. Dist. LEXIS 51474 (D. Utah
   July 7, 2008) .....................................................................................................6

*Jeffries v. Wells Fargo & Co.*,
   2:16-cv-01987, 2017 U.S. Dist. LEXIS 115483 (N.D. Ala. July 25,
   2017) .................................................................................................................6

*Jenkins v. First Am. Cash Advance of Ga., LLC*,
   400 F.3d 868 (11th Cir. 2005) .......................................................................4, 9

*John B. Goodman Ltd. P'ship v. THF Const., Inc.*,
   321 F.3d 1094 (11th Cir. 2003) .........................................................................5

*Johnson v. Springleaf Fin. Servs.*,
   Case No.: 2:15-CV-1268-RDP, 2015 U.S. Dist. LEXIS 10103
   (N.D. Ala. Aug. 20, 2015) ............................................................................5, 10

*Krutchik v. Chase Bank USA, N.A.*,
   531 F. Supp. 2d 1359 (S.D. Fla. 2008) ..............................................................7

*Lambert v. Austin Ind.*,
   544 F.3d 1192 (11th Cir. 2008) ....................................................................5, 11

*Lee v. Comcast Cable Communs., Inc.*,
   Case No.: 7:130-cv-01288-SGC, 2015 U.S. Dist. LEXIS 100288
   (N.D. Ala. July 15, 2015) ..................................................................................7

*Mitchell v. Wells Fargo Bank*,
   Case 2:16-cv-00966-CW-DBP, 2017 U.S. Dist. LEXIS 197197
   (D. Utah Nov. 29, 2017) ...................................................................................6

*Parris v. Keystone Foods, LLC*,
   959 F. Supp. 2d 1291 (N.D. Ala. 2013) ............................................................5

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967)......................................................................................................4

*Scott v. EFN Invs., LLC*,
    312 Fed. Appx. 254 (11th Cir. 2009)............................................................................11

*Southland Health Servs., Inc. v. Bank of Vernon*,
    887 F. Supp. 2d 1158 (N.D. Ala. Aug. 9, 2012).............................................................9

*Taylor v. First N. Am. Nat'l Bank*,
    325 F. Supp. 2d 1304 (M.D. Ala. 2004).........................................................................7

*Tuck v. Wyle CAS Grp., Inc.*,
    2014 U.S. Dist. LEXIS 143392 (N.D. Ala. Sept. 16, 2014).........................................12

*Wright Express Fin. Servs. Corp. v. ACAS Acquisition (Logex), Inc.*,
    Case No. 2:06CV1039DAK, 2007 U.S. Dist. LEXIS 84266
    (D. Utah Nov. 14, 2007) ................................................................................................6

**Statutes**

9 U.S.C. § 2 .............................................................................................................................4

9 U.S.C. §§ 2-4.....................................................................................................................11

Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ........................................................1, 2

FCRA ..........................................................................................................................4, 10, 11

FDCPA ........................................................................................................................4, 10, 11

Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq.* .......................................................4, 5, 10, 11

Utah Code § 25-5-4(2)(e)........................................................................................................6

Utah Code § 25-5-4(2)(e)(i).....................................................................................................7

Utah Code § 25-5-4(2)(e)(ii)....................................................................................................8

Utah Code § 25-5-4(2)(e)(iii)...................................................................................................8

Defendant Portfolio Recovery Associates, LLC ("PRA"), by counsel, submits its Memorandum of Law in Support of its Motion to Stay or Dismiss Proceedings and Compel Arbitration.

## INTRODUCTION

Plaintiff William Lester, Jr. ("Plaintiff") purports to bring an individual action against PRA under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") and Alabama state law. The terms and conditions of Plaintiff's underlying card member agreement ("Terms and Conditions") expressly require that any and all such claims be arbitrated. Because all of Plaintiff's claims are covered by the Terms and Condition's arbitration provision ("Arbitration Provision"), PRA respectfully asks the Court to compel Plaintiff to arbitrate his claims and dismiss the Complaint.[1]

## FACTS

*Facts Relevant to the Underlying Debt:*

This action arises out of a debt Plaintiff incurred some time prior to June 2016 on a Lowes Home Improvement ("Lowes") credit card for an account ending in numbers -4658 (the "Account"), which was issued by Synchrony Bank ("Synchrony"). (Dkt. No. 1-1, at ¶ 28 ("Plaintiff had a Synchrony Bank (Lowes)

---

[1] Prior to filing this motion, PRA communicated to Plaintiff its intention to seek arbitration in this matter and sought Plaintiff's consent. Plaintiff refused to submit his claims to arbitration. Pursuant to this Court's initial scheduling order, the parties also separately met and conferred to discuss PRA's intent to arbitrate Plaintiff's claims.

credit card."); *see also* Declaration of Martha A. Koehler, March 28, 2018, at ¶ 6 (hereinafter, "Koehler Decl." attached hereto as **Exhibit 1**). Plaintiff opened the account with Synchrony in 2011 and made multiple purchases on his Lowes credit card until he defaulted on the Account in late 2015. (*See* Koehler Decl., at ¶ 6, at Exs. D & E).

The Terms and Conditions for Plaintiff's Account contain both an assignment provision and an Arbitration Provision. (*See* Koehler Decl., at Ex. B). The assignment provision states, "[w]e may sell, assign or transfer any or all of our rights or duties under this Agreement or your account, including our rights to payments." (*Id.*)

The Arbitration Provision appears under the heading "**RESOLVING A DISPUTE WITH ARBITRATION**," and states in part:

- **What claims are subject to arbitration**
    1. If either you or we make a demand for arbitration, you and we must arbitrate any dispute or claim between you or any other user of your account, and us, our affiliates, agents and/or Lowe's Companies, Inc., if it relates to your account, except as noted below.
    2. We will not require you to arbitrate: (1) any individual case in small claims court . . . , so long as it remains an individual case in that court; or (2) a case we file to collect money you owe us. However, if you respond to the collection lawsuit by claiming any wrongdoing, we may require you to arbitrate.
    3. Notwithstanding any other language in this section, only a court, not an arbitrator, will decide disputes about the validity, enforceability, coverage or scope of this section or any part thereof . . . . However, any dispute or argument

2

> that concerns the validity or enforceability of the Agreement as a whole is for the arbitrator, not a court, to decide.
>
> ****
>
> - **Governing Law for Arbitration**
>   This Arbitration section of your Agreement is governed by the Federal Arbitration Act (FAA). Utah law shall apply to the extent state law is relevant under the FAA . . . .

(*See* Koehler Decl., at Ex. C at p. 2). Further, the Terms and Conditions state that "[b]y opening or using your account, you agree to the terms of the entire Agreement." (*Id.*)

Subsequent to Plaintiff's default and Synchrony's charge-off of the Account, PRA purchased the Account from Synchrony in June 2016. (*See* Koehler Decl., at Ex. G). The Bill of Sale states that Synchrony "hereby transfers, sells, conveys, grants, and delivers to . . . [PRA], its successors and assigns, . . ., to the extent of its ownership, the Receivables as set forth in the Notification Files . . . , delivered by Seller to Buyer on June 22, 2016." (*Id.*)

***Facts Relevant to the Present Action:***

According to Plaintiff's Complaint, PRA retained Rausch, Sturm, Israel, Enerson & Hornik, LLC ("Rausch") to collect the debt via a state court debt collection action. Rausch filed the aforementioned action on May 2, 2017, and requested relief in the form of $4,061.73. (Dkt. No. 1-1, at ¶¶ 30–30). On May 31, 2017, Rausch and Plaintiff negotiated a settlement of the state court action for $1,016.00. *Id.* at ¶ 32. Plaintiff allegedly made the settlement payment to Rausch

per this agreement. *Id.* at ¶ 34. On June 4, 2017, Rausch sent Plaintiff a letter informing him that his "Account Has Been Resolved." *Id.* at ¶ 42. On June 28, 2017, the state court action was dismissed with prejudice. *Id.* at ¶¶ 47–48.

Plaintiff alleges that PRA continued to report an outstanding balance of $3,045.73. *Id.* at ¶¶ 59, 60, 66, 78, 83, 91. Plaintiff claims he disputed the debt with Equifax, TransUnion, and Experian multiple times in the months following the purported settlement. *Id.* at ¶¶ 70–71. In response to Plaintiff's disputes, PRA verified the information reported as accurate. *Id.* at ¶¶ 74, 76, 82. In his eleven-count complaint, Plaintiff alleges PRA's actions violate the FCRA and Sections 1692d, e, e(2), e(8), e(10), f, and f(1) of the FDCPA, and constitute invasion of privacy, negligent hiring of incompetent debt collectors, and negligent/wanton/intentional/malicious conduct. *Id.* at pp. 14–23.

## ARGUMENT

### 1.   General Scope of Federal Arbitration Act

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1, *et seq.*, makes written arbitration provisions "valid, irrevocable and enforceable" in contracts "evidencing transactions in 'commerce.'" 9 U.S.C. § 2; *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 401 (1967); *see also Jenkins v. First Am. Cash Advance of Ga., LLC*, 400 F.3d 868, 874 (11th Cir. 2005) ("The Supreme Court has interpreted the term 'involving

4

commerce' in the FAA as the functional equivalent of the more familiar term 'affecting commerce'") (internal quotation marks and citations omitted).

"[A] claim is arbitrable if the following three criteria are satisfied: (1) there is a valid agreement to arbitrate; (2) the claim falls within the scope of the agreement to arbitrate; and (3) the claim, if a statutory one, must not be one which the legislative body enacting it intended to be precluded from arbitration." *Johnson v. Springleaf Fin. Servs.*, Case No.: 2:15-CV-1268-RDP, 2015 U.S. Dist. LEXIS 10103, at *6 (N.D. Ala. Aug. 20, 2015) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991)). If the Court is satisfied that the parties agreed to arbitrate then it must grant a motion to compel arbitration. *John B. Goodman Ltd. P'ship v. THF Const., Inc.*, 321 F.3d 1094, 1095 (11th Cir. 2003).

### 2. A Valid Agreement to Arbitrate Exists

The validity of an arbitration agreement is a question of state-law contract principles. *See Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (interpreting an agreement to arbitrate under Georgia state law); *see also Parris v. Keystone Foods, LLC*, 959 F. Supp. 2d 1291, 1301–02 (N.D. Ala. 2013) ("[I]n construing arbitration agreements, courts apply state-law principles relating to ordinary contract formation and interpretation, viewed through the lens of the federal policy favoring arbitration.") (citation omitted). Moreover, the party moving for arbitration must prove by a preponderance of the evidence the existence of a valid

agreement to arbitrate. *See Burch v. P.J. Cheese, Inc.*, 861 F.3d 1338, 1346 (11th Cir. 2017) (citations omitted); *Island Peak Ranch, LLC v. FIIK Inv. & Holdings, Inc.*, Civil No. 2:02-CV-562, 2008 U.S. Dist. LEXIS 51474, at *25 (D. Utah July 7, 2008) (citations omitted).

In this case, the Terms and Conditions are governed by Utah law.[2] (*See* Koehler Decl., Ex. B). "Under Utah law, generally, formation of a contract requires an offer, an acceptance, and consideration." *Mitchell v. Wells Fargo Bank*, Case 2:16-cv-00966-CW-DBP, 2017 U.S. Dist. LEXIS 197197, at *32 (D. Utah Nov. 29, 2017) (applying Utah law in considering whether the parties entered into an agreement to arbitrate and noting that mutual agreement to definite terms is also required within the aforementioned elements). With respect to credit agreements specifically, Utah Code § 25-5-4(2)(e) states that a credit agreement is binding without a signature where the consumer is provided with a copy of the terms of the agreement; where the agreement provides that use of the credit card constitutes acceptance of the terms; and where the consumer uses the credit card. *See Am. Express Bank FSB v. Tanne*, 2017 Utah App. LEXIS 233, at *3–4 (Utah Ct. App. Nov. 30, 2017); *Wright Express Fin. Servs. Corp. v. ACAS Acquisition (Logex), Inc.*,

---

[2] The Court would reach the same result even if it chose to apply Alabama law, which has similar contract formation requirements to Utah. *See Jeffries v. Wells Fargo & Co.*, 2:16-cv-01987, 2017 U.S. Dist. LEXIS 115483, at *8 (N.D. Ala. July 25, 2017) (finding "offer and acceptance, consideration, and 'mutual assent to terms essential to the formation of the contract'" as the elements of contract formation under Alabama law).

6

Case No. 2:06CV1039DAK, 2007 U.S. Dist. LEXIS 84266, at *6 (D. Utah Nov. 14, 2007).[3]

The Terms and Conditions of Plaintiff's Account constitute a valid agreement to arbitrate and PRA's purchase of the Account from Synchrony allows it to enforce the agreement, including the Arbitration Provision.  First, the contract elements of consideration and mutual agreement to the terms governing Plaintiff's Account are present. Synchrony promised to extend credit to Plaintiff in return for his promise to pay the amounts credited to the card.  (*See* Koehler Decl., at Ex. B at p. 2). The Terms and Conditions contain clear language regarding each party's obligations under the agreement under bold, conspicuous headings and uniformly sized font.

Second, the elements of offer and acceptance are satisfied.  Synchrony mailed the Terms and Conditions for Plaintiff's Account along with the credit card to Plaintiff at his address of record after Synchrony accepted Plaintiff's credit application. (Koehler Decl., at ¶¶ 6-7); *see* Utah Code § 25-5-4(2)(e)(i) ("A credit

---

[3] Alabama law also recognizes the binding nature of credit agreements absent a signature. *See Lee v. Comcast Cable Communs., Inc.*, No.: 7:130-cv-01288-SGC, 2015 U.S. Dist. LEXIS 100288, at *9 (N.D. Ala. July 15, 2015) (collecting cases that stand for proposition that under Alabama law a consumer's receipt of the cardmember agreement and use of the credit card constitute acceptance of the agreement's terms) (citations omitted); *Taylor v. First N. Am. Nat'l Bank*, 325 F. Supp. 2d 1304, 1313 (M.D. Ala. 2004) ("Under Alabama law there is no requirement that a contract contain a signature to demonstrate assent; the existence of a contract may be inferred from external and objective manifestations of assent . . . . specifically, a credit card holder's use of her card signals her assent to the terms of the credit card agreement.") (citations omitted); *accord Krutchik v. Chase Bank USA, N.A.*, 531 F. Supp. 2d 1359, 1364–65 (S.D. Fla. 2008) (finding under the totality of the evidence that Plaintiff received the credit card member agreement even though Plaintiff denied receipt) (citing *Chastain v. Robinson-Humphrey Co.*, 957 F.2d 851, 854 (11th Cir. 1992)).

agreement is binding and enforceable without any signature by the party to be charged if: (i) the debtor is provided with a written copy of the terms of the agreement . . . ."). The Terms and Conditions state that "[b]y opening or using your account, you agree to the terms of this entire Agreement." (Koehler Decl., at Ex. B); *see* Utah Code § 25-5-4(2)(e)(ii) ("A credit agreement is binding and enforceable without any signature by the party to be charged if: . . . (ii) the agreement provides that any use of the credit offered shall constitute acceptance of those terms . . . ."). Plaintiff also had online access to his billing statements and the terms and conditions once he enrolled in Synchrony's e-bill system. (Koehler Decl., at ¶ 8).

Moreover, Plaintiff admitted in his Complaint that he had the Account with Synchrony (Dkt. No. 1-1, at ¶ 28), and his billing statements show Plaintiff used the credit card to make numerous purchases at Lowes stores after his receipt of the Terms and Conditions. (*See* Koehler Decl., at Exs. D & E); Utah Code § 25-5-4(2)(e)(iii) ("A credit agreement is binding and enforceable without any signature by the party to be charged if: . . . (iii) after the debtor receives the agreement, the debtor . . . uses the credit offered.").[4]

Likewise, there is also no dispute that PRA is a party to the Terms and Conditions because it lawfully purchased Synchrony's ownership rights in the

---

[4] The billing statements for Plaintiff's account reflect that Plaintiff, an Alabama resident, made multiple purchases at Lowes stores and remitted payments to Synchrony in Utah. Thus, these

8

account per the terms of the Bill of Sale. (*See* Koehler Decl., at Ex. G). Synchrony was entitled to sell the Account per the terms of the assignment provision contained in the Terms and Conditions. (*Id.*). Thus, PRA steps into Synchrony's shoes with regards to the Account, and is now a party to the Terms and Conditions. As a result, there is no question a valid and enforceable agreement to agreement exists.

### 3. Plaintiff's Claims Fall Within the Scope of the Arbitration Clause

Plaintiff's claims fall within the broad scope of the Arbitration Provision because, by its own language, the clause applies to "any dispute or claim" between the parties. Courts in this district routinely uphold broad arbitration clauses. *See, e.g.*, *Southland Health Servs., Inc. v. Bank of Vernon*, 887 F. Supp. 2d 1158, 1165 (N.D. Ala. Aug. 9, 2012) ("The wide scope of these arbitration agreements does not pose an obstacle to their enforcement."); *see also Emerson Software Sols., Inc. v. Regions Fin. Corp.*, Case No.: 2:17-cv-00287-JHE, 2017 U.S. Dist. LEXIS 172830, at *8–9 (N.D. Ala. Oct. 19, 2017); *cf. Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218 (11th Cir. 2011) (noting that if the parties had wanted a more inclusive arbitration clause, "it should have left the scope of it at 'any and all disputes, claims, or controversies whatsoever' . . . ."). As the Eleventh Circuit has found:

> There also is nothing unusual about an arbitration clause, especially in an account agreement, that requires arbitration of all disputes between the parties to the agreement. We have enforced such a clause before

---

transactions necessarily involve interstate commerce. *See Jenkins*, 400 F.3d at 874–75 (11th Cir. 2005).

because it "evince[d] a clear intent to cover more than just those matters set forth in the contract."

*Bd. Of Trustees of City of Delray Beach Police and Firefighters Retirement Sys. v. Citigroup Global Markets, Inc.*, 622 F.3d 1335, 1343 (11th Cir. 2010) (citations omitted); *see also Brown v. ITT Consumer Fin. Corp.*, 211 F.3d 1217, 1221 (11th Cir. 2000) ("A party cannot avoid arbitration . . . because the arbitration clause uses general, inclusive language, rather than listing every possible specific claim . . . .").

The Arbitration Provision in this matter states Plaintiff "must arbitrate **any dispute or claim** between you or any other user of your account, and us . . . ." (Koehler Decl., at Ex. B.) (emphasis added). Here, all Plaintiff's claims are subject to the arbitration provision. Courts within the Eleventh Circuit, including this Court, have repeatedly found that FCRA and FDCPA claims are arbitrable. *See Johnson*, 2015 U.S. Dist. LEXIS 10103, at *6 (N.D. Ala. Aug. 20, 2015) (Plaintiff's FCRA claim is arbitrable under the FAA); *Campbell v. Verizon Wireless, LLC*, Civil Action 14-0517-WS-N, 2015 U.S. Dist. LEXIS 10707, at *35 (S.D. Ala. Jan. 29, 2015) (finding Plaintiff's FDCPA and FCRA claims arbitrable where there was no "clear, specific expression by Congress that claims" brought under these statutes could not be arbitrated); *Bolanos v. First Investors Servicing Corp.*, Case Number: 10-23365-CIV-MORENO, 2010 U.S. Dist. LEXIS 115475, at *6 (S.D. Fla. Oct. 28, 2010) (ordering arbitration of FDCPA claim); *Scott v. EFN Invs., LLC*, 312 Fed. Appx. 254, 256 (11th Cir. 2009) (affirming the district court's dismissal of a case in favor

of arbitration for an action involving claims under the FCRA); *Athon v. Direct Merchs. Bank*, 251 Fed. Appx. 602, 602 (11th Cir. 2007) (affirming the district court's dismissal of a case in favor of arbitration for an action involving claims under the FDCPA).

In addition to Plaintiff's federal statutory claims, his common law claims for invasion of privacy, negligent hiring of incompetent debt collectors, and negligent/wanton/intentional/malicious conduct fall within the "any claim" language in the Arbitration Provision. Thus, this Court should follow the overwhelming weight of authority on this issue and find Plaintiff's claims appropriate for arbitration.

### 4.   **This Court Should Dismiss This Action**

Once a matter is deemed arbitrable, "the FAA requires a court to either stay or dismiss a lawsuit . . . ." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2-4)).

While there does not appear to be a clear consensus within the Eleventh Circuit regarding whether a stay or dismissal is appropriate, other courts have found that where all claims are raised in a complaint are arbitrable, dismissal of the matter is appropriate. *Tuck v. Wyle CAS Grp., Inc.*, 2014 U.S. Dist. LEXIS 143392, at *5–6 (N.D. Ala. Sept. 16, 2014) (citing *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001) (noting that the Eleventh Circuit

11

has affirmed stays and dismissals of actions sent to arbitration but choosing to adhere to the express language of the statute and stay the matter at bar while also noting the movant requested a dismissal or stay without indicating a preference for one or the other). Since all of Plaintiff's claims fall under the scope of the arbitration provision, this Court should compel the parties to arbitration and dismiss this action without prejudice.

## CONCLUSION

For the foregoing reasons, PRA respectfully requests this Court to grant its Motion to Compel Arbitration, order Plaintiff to arbitrate his claims against PRA, dismiss this lawsuit without prejudice, and grant PRA such other and further relief as this Court deems appropriate and just.

Date: May 3, 2018                By: */s/ Danielle K. Greco*
                                 Danielle K. Greco (Asb-5970-I69G)
                                 305 Church at North Hills Street
                                 Raleigh, North Carolina
                                 Telephone: (919) 835-4147
                                 Facsimile: (919) 835-4101
                                 Email: danielle.greco@troutman.com

                                 Ethan G. Ostroff (Admitted *pro hac vice*)
                                 222 Central Park Avenue, Suite 2000
                                 Virginia Beach, Virginia 23462
                                 Telephone: (757) 687-7541
                                 Facsimile: (757) 687-1541
                                 Email: ethan.ostroff@troutman.com

                                 *Attorneys for Defendant*
                                 *Portfolio Recovery Associates, LLC*

## CERTIFICATION AND CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

*/s/ Danielle K. Greco*
Danielle K. Greco

## CERTIFICATION AND CERTIFICATE OF SERVICE

I hereby certify that on May 3, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing to counsel of record.

*/s/ Danielle K. Greco*
Danielle K. Greco

13